IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**UNITED STATES OF AMERICA,**

v.                                                      **Criminal Case No. 3:25cr012**

**RASHON LOFTON,**

       **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Rashon Lofton's Motion to Suppress and Memorandum in Support (the "Motion to Suppress" or "Motion").[1] (ECF No. 18.) On March 10, 2025, Mr. Lofton moved to suppress evidence recovered and statements obtained from his September 18, 2024 arrest. (ECF No. 18, at 1.) The United States responded, (ECF No. 24), and Mr. Lofton replied, (ECF No. 25). On April 15, 2025, the Court heard evidence and oral argument. This matter is ripe for disposition. For the reasons articulated below, the Court will deny the Motion to Suppress.

### I. Procedural History and Findings of Fact

#### A.    Procedural History

On February 4, 2025, the United States filed a one-count Indictment against Mr. Lofton for Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1) ("Count One"). (ECF No. 1, at 1.) On February 7, 2025, Mr. Lofton appeared before Magistrate Judge Mark R. Colombell for an initial appearance. (ECF No. 6.) On February 24, 2025, Mr. Lofton appeared before this Court for an arraignment. (ECF No. 15.) On February 25, 2025, this Court issued a scheduling order for pretrial motions and a date for trial. (ECF No. 16.)

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system.

On March 10, 2025, Mr. Lofton filed the Motion to Suppress. (ECF No. 18.) The United States responded, (ECF No. 24), and Mr. Lofton replied, (ECF No. 25). On March 14, 2025, the Court continued this matter pending the resolution of the Motion to Suppress. (ECF No. 23, at 1–2.) On April 15, 2025, the Court heard evidence and oral argument on the Motion to Suppress, and ordered post-hearing briefing. (ECF No. 30.)

On May 7, 2025, Mr. Lofton filed a Supplemental Brief in Support of His Motion to Suppress. (ECF No. 31.) The United States then filed a Supplemental Brief in opposition, (ECF No. 32), to which Mr. Lofton replied, (ECF No. 33).

### B. **Findings of Fact**

On September 18, 2024 at approximately 11:40 p.m., Officer Levi Pardee responded to a 911 call for a possible medical emergency at a 7-11 gas station in Richmond, Virginia. (Tr. 6:4–7; *see generally* U.S. Ex. 1.) Officer Pardee noted that this location has a history of narcotics usage and that he has responded to this location on other occasions for drug related activities. (Tr. 6:14–7:4.) More broadly, Officer Pardee has responded to "around [fifty] or so" overdose cases in his career. (Tr. 5:7–10.) He had Narcan in his vehicle and was "prepared to administer [the Narcan], depending on the situation[.]" (Tr. 14:3–10.)

The caller informed 911 that he observed a man "passed out" in a white car. (Tr. 6:8–13; 10:4–6.) The caller reported "a potential overdose" and indicated that there was "a male down in a white vehicle" who "had been down for about ten minutes." (Tr. 6:4–10.) The dispatcher issued a "code 3" call, which means that "there's an imminent threat of life and limb." (Tr. 8:1–9.)

After Officer Pardee arrived at the scene, a bystander pointed in the direction of Mr. Lofton's white vehicle, and Officer Pardee approached the vehicle. (Tr. 28:15–24; U.S. Ex. 1, at

2

00:09–00:19.) The vehicle was parked next to a well-lit gas pump where a man was slumped over with his head down in the driver's seat and a second individual was slumped over in the front passenger's seat. (Tr. 12:24–13:19; 14:23–15:2; 43:17–19; U.S. Ex. 1, at 00:14–00:19; U.S. Ex. 2, at 00:30–00:32.) The vehicle was parked at a gas pump with the lights on and the motor running. (Tr. 30:11–25; U.S. Ex. 1, at 00:14–00:19; U.S. Ex. 2, at 00:30–00:32.)

Over the span of no more than two seconds, Officer Pardee knocked three times in rapid succession on the driver's side window, and then immediately opened the driver's side door. (Tr. 36:7–37:3; U.S. Ex. 1, at 00:20–00:22.) Mr. Lofton made a startled noise after Officer Pardee opened the door; Officer Pardee asked, "Y'all good?", to which Mr. Lofton responded, "Yeah!" (Tr. 37:4–7; U.S. Ex. 1, at 00:29–31.) Officer Pardee then asked Mr. Lofton, "Weren't you just down at Murry's?" (Tr. 37:8–9; U.S. Ex. 1, at 00:29–00:33.)[2] By this point, Officer Pardee was in the space between the vehicle's door and the driver's seat where Mr. Lofton sat. (U.S. Ex. 1, at 00:33–00:36.) Officer Pardee then "clear[ed]" the suspected emergency over his radio. (Tr. 16:9–24; U.S. Ex. 1, at 00:40–00:43.) At some point after Officer Pardee opened Mr. Lofton's door and began speaking to Mr. Lofton, he noticed a cut straw with white residue inside the car in the center console. (Tr. 21:25–22:24; 38:5–13.)

Officer Pardee put latex gloves on as he continued to speak to Mr. Lofton, noting that "we're a little concerned that you're just hammered, or not hammered, but you're sleeping super soundly, does anybody need medical attention?" (Ex. 1, at 00:45–00:59.) Mr. Lofton responded "no, we're fine." (U.S. Ex. 1, at 01:00–1:01.) Officer Pardee then asked Mr. Lofton to get out of the vehicle. (U.S. Ex. 1, at 01:05–01:06.) After Officer Pardee repeated this request multiple

---

[2] At the April 15, 2025 Hearing, Officer Pardee clarified that Murry's is a convenience store in a "high drug use area" that sells alcohol. (Tr. 17:6–13; 37:10–15.)

3

times and then threatened to pull Mr. Lofton out of the vehicle, Mr. Lofton eventually complied. (U.S. Ex. 1, at 01:10–01:29.) As Mr. Lofton exited his car, Officer Pardee asked Mr. Lofton to put his hands behind his back and placed him in handcuffs. (U.S. Ex. 1, at 01:29–01:49.) Law enforcement then searched Mr. Lofton and removed a firearm protruding from his pocket. (Tr. 23:22–24:2; U.S. Ex. 2, at 1:54–2:04.) Officer Pardee explained that he was detaining Mr. Lofton because after "looking at [his] car", he noticed a cut straw with white powder residue that "is more than likely cocaine." (Tr. 24:23–25:5; U.S. Ex. 1, at 02:23–2:34.)

After recovering the firearm, law enforcement searched Mr. Lofton's vehicle and recovered a cut straw with suspected narcotics residue on it, a pink scale with suspected narcotics residue on it, and multiple lottery tickets. (Tr. 38:5–23; 39:10–13.)

## II. Analysis

The Court will deny Mr. Lofton's Motion to Suppress. (ECF No. 18.) Even assuming, without deciding, that Officer Pardee opened Mr. Lofton's door in violation of the Fourth Amendment[3], Officer Pardee had reasonable suspicion to conduct a *Terry* stop before opening

---

[3] The Fourth Amendment of the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

the door.[4] As a result, the evidence at issue in this case would have been inevitably discovered, and therefore will not be suppressed.[5]

Because Officer Pardee had reasonable suspicion to conduct a *Terry* stop before opening Mr. Lofton's car door to investigate, at a minimum, a possible Driving Under the Influence charge, the evidence at issue would have been inevitably discovered. Thus, all evidence and statements obtained as a result of the search of Mr. Lofton's vehicle are admissible under the inevitable discovery doctrine. The Court will deny the Motion to Suppress.

### A. Office Pardee Had Reasonable Suspicion to Conduct a *Terry* Stop, and Thus the Evidence Would Have Been Inevitably Discovered

The United States argues that independent of the exigent circumstances and community caretaking exceptions, "Officer Pardee had reasonable articulable suspicion to believe that [Mr. Lofton] was engaged in criminal activity." (ECF No. 24, at 4.) Thus, "even if the search was unlawful, the evidence in this case would have been inevitably discovered." (ECF No. 24, at 4.) For the reasons articulated below, the Court agrees. At a minimum, Officer Pardee had a reasonable basis to believe that Mr. Lofton was unlawfully operating a vehicle under the influence of alcohol or drugs even before Officer Pardee opened the vehicle door, and the evidence obtained as a result of Mr. Lofton's arrest would have been inevitably discovered.

---

[4] As discussed in more detail below, a law enforcement officer is permitted to lawfully stop and briefly detain a person for investigative purposes (a "*Terry* stop") when the officer has a "reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000); *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

[5] The United States argues that the search was also lawful under both the exigent circumstances and community caretaking exceptions to the warrant requirement. (ECF No. 24.) Mr. Lofton disagrees. (ECF No. 25.) Because the inevitable discovery doctrine applies here, the Court need not, and does not, conclude whether these additional two exceptions also apply.

1.  **Legal Standard: Inevitable Discovery**

"Generally, the government is prohibited from using evidence discovered in an unlawful [manner] against the individual whose constitutional right was violated." *United States v. Seay*, 944 F.3d 220, 223 (4th Cir. 2019) (citing *United States v. Doyle*, 650 F.3d 460, 466 (4th Cir. 2011)). However, the inevitable discovery doctrine serves as an exception to this rule. *Id.* (citing *United States v. Bullette*, 854 F.3d 261, 265 (4th Cir. 2017)).

Pursuant to the inevitable discovery doctrine, "the government [may] use evidence gathered in an otherwise unreasonable search if it can prove by a preponderance of the evidence that law enforcement would have ultimately or inevitably discovered the evidence by lawful means." *Seay*, 944 F.3d at 223 (internal quotation marks omitted) (quoting *Bullette*, 854 F.3d at 265). In that context, "[t]he burden of showing something by a preponderance of the evidence . . . simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." *Salem v. Holder*, 647 F.3d 111, 116 (4th Cir. 2011) (internal quotation marks omitted) (quoting *United States v. Manigan*, 592 F.3d 621, 631 (4th Cir. 2010)); *see, e.g., United States v. Dickson*, 849 F.3d 686, 690 (7th Cir. 2017) (noting that "even if" law enforcement had unlawfully obtained evidence from a car, "it would be admissible under the inevitable discovery doctrine" because law enforcement had reasonable suspicion to investigate defendant "for possibly driving drunk or having an open container of alcohol.")

2.  **Legal Standard: Investigatory Stops**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. The Fourth Amendment's "protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002)

6

(citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968)). These protections allow an officer to lawfully stop and briefly detain a person for investigative purposes (a "*Terry* stop") when the officer has a "reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000); *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *Terry*, 392 U.S. at 30.

"[R]easonable suspicion" is a "less demanding standard than probable cause and requires a showing considerably less than a preponderance of the evidence." *Wardlow*, 528 U.S. at 123. To satisfy the standard, an officer need only "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion." *Terry*, 392 U.S. at 21. The suspicion must also be objectively reasonable based on those facts. *United States v. Cortez*, 449 U.S. 411, 417–18 (1981).

To determine whether an officer had such a specific, articulable, and objective basis to "'suspect[ ] legal wrongdoing,' 'reviewing courts . . . must look at the totality of the circumstances of each case'" based on the facts known to the officer at the time of the seizure. *United States v. Kehoe*, 893 F.3d 232, 237 (4th Cir. 2018) (quoting *Arvizu*, 534 U.S. at 273). The facts available at the time of the seizure "must be seen and weighed . . . as understood by those versed in the field of law enforcement." *Cortez*, 449 U.S. at 418 (finding that objective facts that would be meaningless to the untrained, afford a legitimate basis for suspicion when used by trained law enforcement officers); *see also Arvizu*, 534 U.S. at 273 (stating that officers can "draw on their own experience and specialized training to make inferences from and deductions about cumulative information available to them that 'might well elude an untrained person'").

Reasonable suspicion "does not deal with hard certainties, but with probabilities," so "an officer's articulated facts must in their totality serve to eliminate a substantial portion of innocent

7

travelers before reasonable suspicion will exist." *United States v. McCoy,* 513 F.3d 405, 413 (4th Cir. 2008), *cert. denied,* 553 U.S. 1061 (2008) (each of an officer's articulated facts *on its own* is not required to eliminate every innocent traveler and establish reasonable suspicion). Courts apply "commonsense and [a] contextual approach in evaluating the validity of an investigatory detention." *United States v. McBride,* 676 F.3d 385, 392 (4th Cir. 2012).

While an officer's "mere hunch," *Arvizu,* 534 U.S. at 274, or reliance on an uncorroborated anonymous tip, *United States v. Brown,* 401 F.3d 588, 595–96 (4th Cir. 2005), insufficiently supports "reasonable suspicion," the standard is not a particularly onerous one. *See, e.g., McCoy,* 513 F.3d at 412–13 (experienced officer's observation of vehicles moving between parking lots where drug sales had previously occurred and without occupants entering the stores sufficient to constitute reasonable suspicion).

Courts commonly find that investigatory stops are justified where the stops involve individuals seemingly asleep or unconscious in vehicles under unusual or suspicious circumstances. *See, e.g., United States v. Coleman,* 18 F.4th 131, 136 (4th Cir. 2021) (investigatory stop supported by reasonable suspicion where law enforcement "was dispatched to [a] high school to investigate a school administrator's report" that "a sleeping or unconscious unidentified man (who was plainly a non-student) was parked erratically in the school parking lot."); *United States v. McQueen,* 445 F.3d 757, 759 (4th Cir. 2006) (investigatory stop supported by reasonable suspicion where "reliable informant phoned in tip about suspicious car in a bar parking lot", from a distance, officers observed unconscious man in driver's seat of car with a bashed in rear bumper and out-of-state license plates, the car was running at idle, and was parked in area known for drug and gang activity); *United States v. Harrington,* 56 F.4th 195, 201–02 (1st Cir. 2022) (investigatory stop of two men passed out in running vehicle supported by

reasonable suspicion "given the unusual time of day for a nap, the peculiarity of individuals napping on a weekday, the reality that the area was known for high drug use, and the obvious signs of drug impairment."); *United States v. Townsend*, 206 F. App'x 444, 448 (6th Cir. 2006) (investigatory stop supported by reasonable suspicion that defendant was driving under the influence where defendant "had been asleep at the wheel of a parked vehicle in front of an open-for-business gas pump for an extended period of time", the defendant "did not respond to verbal inquiry", and "the observed presence of a handgun within [the defendant's] reach clearly enhanced the suspiciousness of the circumstances.")

### 3. The Inevitable Discovery Doctrine Applies Here Where Officer Pardee Had Reasonable Suspicion to Conduct a *Terry* Stop

The United States contends that "Officer Pardee had reasonable suspicion to conduct a *Terry* stop", and therefore the evidence at issue "would have been inevitably discovered." (ECF No. 24, at 10–15.) The Court agrees. Even assuming, without deciding, that Officer Pardee opened Mr. Lofton's door in violation of the Fourth Amendment, the United States has shown by a preponderance of the evidence that law enforcement would have inevitably discovered the firearm from Mr. Lofton's pocket and the suspected drug-related items recovered from Mr. Lofton's vehicle.

Officer Pardee arrived at the 7-11 gas station shortly before midnight in response to a 911 call for a possible medical emergency. (Tr. 9:10–10:6; *see generally* U.S. Ex. 1.) The caller reported that a man "had been down for about ten minutes." (Tr. 6:9–10.) After Officer Pardee arrived at the scene, a bystander pointed in the direction of Mr. Lofton's white vehicle, and Officer Pardee approached the vehicle. (Tr. 28:15–24; U.S. Ex. 1, at 00:09–00:19.) The vehicle was parked next to a well-lit gas pump where a man was slumped over with his head down in the driver's seat and a second individual was slumped over in the front passenger's seat.

9

(Tr. 12:24–13:19; 14:23–15:2; 43:17–19; U.S. Ex. 1, at 00:14–00:19; U.S. Ex. 2, at 00:30–00:32.) The vehicle was parked at a gas pump with the lights on and the motor running. (Tr. 30:11–25; U.S. Ex. 1, at 00:14–00:19; U.S. Ex. 2, at 00:30–00:32.)

Considering the totality of the circumstances *before* Officer Pardee opened the vehicle door, these facts indicate more than a "mere hunch," *Arvizu*, 534 U.S. at 274, that criminal activity was afoot. When Officer Pardee arrived at the scene, he had been told that Mr. Lofton had been slumped over in a vehicle for at least ten minutes. The vehicle had its radio and lights on and was parked right next to a well-lit gas pump, obstructing others from accessing the gas pump. Although it is not necessarily unusual for individuals to fall asleep in an idle car, it is highly unusual for any vehicle to remain parked for a prolonged period of time in front of a gas pump. Certainly, there are more common, more suitable, and less suspicious locations for sleeping in a car than immediately next to a gas pump. Also, Officer Pardee has previously responded to this location on other occasions for drug related activities. (Tr. 6:14–7:4.) Thus, even before Officer Pardee's unlawful search, he had a reasonable basis to believe that, at a minimum, Mr. Lofton was unlawfully operating a vehicle under the influence of alcohol or drugs.[6] *See, e.g., Coleman*, 18 F.4th at 136.

Because Officer Pardee had a reasonable basis to believe that Mr. Lofton was unlawfully operating a vehicle under the influence of alcohol or drugs, even before he opened the vehicle door, he could have ordered Mr. Lofton to exit his vehicle to investigate a suspected DUI. *See Dickson*, 849 F.3d at 690. At that point, law enforcement would have discovered the firearm

---

[6] Because the Court concludes that Officer Pardee had reasonable suspicion to believe that, at a minimum, Mr. Lofton was unlawfully operating a vehicle under the influence of alcohol or drugs, the Court need not, and does not, separately consider whether Officer Pardee also had a reasonable suspicion that Mr. Lofton was in the possession of a controlled substance.

10

protruding from Mr. Lofton's pocket. (Tr. 23:22–24:2; U.S. Ex. 2, at 1:54–2:04.) Furthermore, after Mr. Lofton exited the vehicle law enforcement could have also lawfully viewed the cut straw with white powder in the center console, providing another basis for law enforcement to search the vehicle.

### III. Conclusion

For the foregoing reasons, the Court denies Mr. Lofton's Motion to Suppress. (ECF No. 18.)

An appropriate Order shall issue.

Date: 6/30/25
Richmond, Virginia

/s/ M. Hannah Lauck
United States District Judge